IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| **EDST, LLC,** a Texas limited liability company; and **QUEXT IoT, LLC,** a Texas limited liability company, | **Civil No. 8:22-cv-00272-CEH-JSS** |
| Plaintiffs, | |
| vs. | |
| **iAPARTMENTS, INC.,** a Florida corporation, | |
| Defendant. | |

## PLAINTIFFS EDST, LLC AND QUEXT IOT, LLC'S AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL AND INJUNCTIVE RELIEF

Plaintiffs EDST, LLC ("EDST") and Quext IoT, LLC ("Quext") (collectively "Plaintiffs"), for their complaint of patent infringement, false advertising, and unfair competition against Defendant iApartments, Inc. ("iApartments" or "Defendant") allege as follows:

### I.  THE PARTIES

1.     EDST is a Texas limited liability company with a principal place of business at 5214 68th Street, Suite 402, Lubbock, Texas.

2.     Quext is a Texas limited liability company with a principal place of business at 5214 68th Street, Suite 201, Lubbock, Texas.

3.    On information and belief, iApartments is a Florida Corporation with a principal place of business at 201 E. Kennedy Blvd., Suite 1925, Tampa, Florida.

## II.  NATURE OF ACTION

4.    This is a civil action against Defendant for patent infringement under the United States patent laws, as amended, 35 U.S.C. §§ 101 *et seq*. (the "Patent Laws").  This action arises out of Defendant making, using, selling, offering to sell, and/or importing into the United States certain products and services covered by Plaintiffs' patents and/or inducing or contributing to its customers' direct infringement.  Accordingly, Plaintiffs seek monetary and injunctive relief under the Patent Laws.

5.    This is also a civil action against Defendant for false advertising under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) and unfair competition under the common law.

## III.  JURISDICTION AND VENUE

6.    This Court has subject matter jurisdiction over Plaintiffs' claims for patent infringement pursuant to 35 U.S.C. §§ 101 *et seq*. and 28 U.S.C. §§ 1331 and 1338(a).  This Court also has subject matter jurisdiction over Plaintiffs' claims for false advertising pursuant to 15 U.S.C. § 1125(a).  This Court also has original subject matter jurisdiction over Plaintiffs' state law claim of unfair competition pursuant to 28 U.S.C. § 1338(b), as the claim is joined with Plaintiffs' substantial

and related claims brought under 35 U.S.C. §§ 101 *et seq*. and 15 U.S.C. § 1125(a). The Court also has supplemental jurisdiction over Plaintiffs' state law claim pursuant to 28 U.S.C. § 1367.

7.     On information and belief, this Court has specific and general personal jurisdiction over iApartments consistent with the requirements of the Due Process Clause of the United States Constitution and the Florida Long Arm Statute due at least to its business in this forum, including at least a portion of the infringement alleged herein.  Without limitation, on information and belief, within this state, iApartments has used Plaintiffs' patented inventions thereby committing, and continuing to commit, acts of patent infringement.  Further, iApartments is subject to this Court's specific and general personal jurisdiction because iApartments is incorporated in Florida and its principal place of business is in Florida.

8.     Venue is proper in this District because iApartments is a Florida company and has a regular and established place of business in this District at 201 E. Kennedy Blvd., Suite 1925, Tampa, FL 33602.  iApartments resides in this judicial district under 35 U.S.C. § 1400(b).  Also, on information and belief, iApartments' products and services that are alleged to infringe were and continue to be used, imported, offered for sale, and/or sold in this District.

## IV.  BACKGROUND

### A.    The Asserted Patents

9.    United States Patent No. 10,825,273 (the "'273 Patent") is entitled "Smart Thermostat Hub," and issued on November 3, 2020.  A true and correct copy of the '273 Patent is attached as Exhibit A and is incorporated herein by reference.

10.    United States Patent No. 10,803,685 (the "'685 Patent") is entitled "Smart Thermostat Hub," and issued on October 13, 2020.  A true and correct copy of the '685 Patent is attached as Exhibit B and is incorporated herein by reference.

11.    United States Patent No. 11,189,118 (the "'118 Patent") is entitled "Smart Thermostat Hub," and issued on November 30, 2021.  A true and correct copy of the '118 Patent is attached as Exhibit C and is incorporated herein by reference.

### B.    EDST

12.    EDST is the assignee of all right, title, and interest in the '273 Patent, the '685 Patent, and the '118 Patent (collectively the "Asserted Patents").  In addition to the Asserted Patents, EDST is the owner of several pending utility patent applications, including:   U.S. Patent Application Nos. 17/512,577; 17/571,462; 17/572,530; 17/576,931; 17/576,933; and 17/576,934.

### C.    Quext

13.    Quext is a wholly owned subsidiary of EDST and is the manufacturing arm of products that compete with iApartments' infringing products and services.

- 4 -

Quext was formed in 2017 to develop state of the art Internet-of-Things ("IoT") solutions, cloud-based property management software, and artificial intelligence ("AI") for use in the multifamily residential and commercial property management industries. Today, Quext manufactures IoT systems that are integrated in multi-family and commercial properties and leverage long-range and short-range communication protocols to provide property management and on-premises solutions. Quext focuses on designing intuitive, easy to install, and powerful technologies that help build safer, happier communities. Quext's technology effectuates communication between, e.g., a property management platform, a smart hub, and IoT devices in proximity to the smart hub to support both resident and property management control. With Quext's technology, over fifty communities consisting of over 13,500 units and 30,000 residents are able to thrive. Quext's full range of cutting-edge, multi-dwelling property-specific technologies aid in building value and transforming communities for residents, operators, and ownership teams alike.

**D.    iApartments**

14.    On information and belief, iApartments was incorporated in Florida in 2019. It purports to provide property management systems with security features for multifamily properties. Specifically, iApartments focuses on supplying residential communities with smart devices, such as smart thermostat hubs, smart

locks, lighting, switches, and sensors.  iApartments configures its smart thermostat hubs to communicate with smart devices and property management software, via short-range and long-range communication technologies.  As shown herein, iApartments' Smart Home, Smart Access, and other products and services (collectively, "Accused Products") infringe Plaintiffs' valid and enforceable intellectual property rights.

### E.    iApartments' knowledge of the Asserted Patents

15.    On August 6, 2021, Plaintiffs' counsel notified iApartments' CEO, Dave Magrisso, of iApartments' infringement of at least claim 1 of the '273 Patent and requested that it discontinue making, using, selling, or offering for sale its infringing Accused Products.  Plaintiffs provided a claim chart illustrating that the Accused Products include all features of claim 1 of the '273 Patent.

16.    On September 15, 2021, iApartments' counsel further acknowledged the existence of the '685 Patent, as well as U.S. Patent Application Number 16/912,370, which later issued as the '118 Patent.

17.    On January 7, 2022, Plaintiffs also provided a claim chart to iApartments illustrating that Accused Products include all features of claim 1 of the '118 Patent.

## V.  CAUSES OF ACTION

**A.    COUNT ONE:   iAPARTMENTS' INFRINGEMENT OF THE '273 PATENT**

18.    Plaintiffs incorporate by reference paragraphs 1-17 as if fully set forth herein.

19.    iApartments has been and continues to directly infringe one or more claims of the '273 Patent by making, using, offering to sell, selling, and/or importing a system that practices one or more claims of the '273 Patent, literally or under the doctrine of equivalents.

20.    Independent claim 1 of the '273 Patent recites:

A system for securing smart devices within an apartment of a multi-family residential property, the system comprising:

> an offline door lock comprising:

>> a first memory storing access credential validation information; and

>> a lock processor configured to:

>>> determine validity of received access credential information from a credential device based on the stored access credential validation information; and

> a smart device hub comprising:

>> one or more processors;

>> a second memory communicatively coupled to the one or more processors;

a first interface configured to communicatively couple the one or more processors to a property management platform via a wide area network (WAN) communication link; and

a second interface configured to communicatively couple the one or more processors to the offline door lock via a non-WAN communication link;

where the one or more processors are configured to:

receive control information associated with the offline door lock from the property management platform via the WAN communication link where the control information identifies one or more access credentials to be disabled with respect to the offline door lock,

generate a command configured to disable the one or more access credentials identified in the control information; and

transmit the command to the offline door lock via the non-WAN communication link,

where the lock processor is configured to receive the command via the non-WAN communication link and to modify the stored access credential validation information to disable the one or more access credentials based on the command.

21.    iApartments' Accused Products utilize a smart hub and smart lock to, e.g., disable user access to a multi-family or commercial property.

22.    iApartments' Accused Products include a system for securing smart devices within an apartment of a multi-family residential property, described on iApartments' website as a "set of technology infrastructure integrated into a multifamily community allowing for a variety of services that give greater convenience and control to the residents while making property management and

maintenance more efficient." iApartments' Accused Products are further described below.



23.    iApartments' Accused Products include every feature of claim 1, which is representative of claims 18 and 26. For example, iApartments' Accused Products comprise an offline door lock, as described below.

## Smart Lock







24.    The offline lock comprises a first memory storing access credential validation information.  This feature enables, for example, iApartments' "smart lock" to enable temporary access to a vendor, guest, or the like, as shown below.

### Next-gen access control for smart apartments

A seamless access experience combined with increased security. By simply using their smartphone, residents can move freely about the apartment community. And by sharing exclusive, temporary codes, so can their guests.

25.    The offline lock also comprises a lock processor configured to determine the validity of received access credential information from a credential

device based on the stored access credential validation information. This feature enables, for example, temporary access to a vendor, guest, or the like and is further described below.



26.    iApartments' Accused Products also comprise a smart device hub comprising one or more processors and a second memory communicatively coupled to the one or more processors. For example, iApartments' "smart hub thermostat" utilizes a processor in performing its stated functions and memory in performing its

stated functions.  The smart hub thermostat operates as a smart hub for devices, as further described below.



**SMART HUB THERMOSTAT**

Allows you to control your home temperature, smart lights, smart locks and other devices right from your phone.

27.    The smart device hub also comprises a first interface configured to communicatively couple the one or more processors to a property management platform via a wide area network (WAN) communication link, as further described below.



iApartments
263 followers

+ Follow

Information Technology & Services • 11-50 employees • 20 on LinkedIn

iApartments (Intelligent Apartments) offers a best-in-class, smart home platform providing enterprise-level asset protection, energy management, and access and comfort control features to multifamily properties. From conventional apartments to student housing and senior living, iApartments employs CAT-M1 cellular technology to deliver an easier and more affordable connection to the cloud without a dedicated Wi-Fi or high-voltage network. iApartments has cracked the code to bring a new approach to the "smart community" experience and better serve the needs of owners, managers, and their residents. Founded in 2018, iApartments is currently deploying nationwide driven by its leadership team that includes multifamily, IoT, and smart-home industry veterans with 100+ years of combined experience.

• Good Implementation knowledge on Communication Protocols like Z-wave, Zigbee, LTE, Bluetooth, Wi-Fi, and LoRaWAN

28.    In addition, the smart device hub comprises a second interface configured to communicatively couple the one or more processors to the offline door lock via a non-WAN communication link, as described below.

Z-WAVE

| | |
|---|---|
| Model No. of antenna: | N/A |
| Type of antenna: | Helical antenna |
| Gain of the antenna: | -3.7dBi |
| Frequency range: | 902-928 MHz |

Application: iApartments Thermostat Node

Equipment Class: DXX - Part 15 Low Power Co

Alternate Sources: FCC.gov | FCC.report

Registered By: iApartments, LLC - 2AVIH (Unit

| you@youremail.com | Subscribe |

| App # | Purpose |
|---|---|
| 1 | Original Equipment |
| 2 | Original Equipment |

## Operating Frequencies

**Frequency Range**

916 MHz



29.     The one or more processors of iApartments' smart device hub are configured to receive control information associated with the offline door lock from the property management platform via the WAN communication link where the control information identifies one or more access credentials to be disabled with respect to the offline door lock.  The one or more processors are also configured to generate a command configured to disable the one or more access credentials identified in the control information and to transmit the command to the offline door lock via the non-WAN communication link.  For example, iApartments' "smart hub thermostat" utilizes a processor when performing the corresponding the claim steps to, for example, enable temporary access to a vendor, guest, or the like.  Further, performance of the corresponding claim steps is required for the smart hub

thermostat and the smart lock to operate according to, e.g., the Z-wave standard. Additional information regarding this feature is shown below.



**SMART HUB THERMOSTAT**

Allows you to control your home temperature, smart lights, smart locks and other devices right from your phone.

30.    In addition, the iApartments' lock processor is configured to receive the command via the non-WAN communication link and to modify the stored access credential validation information to disable the one or more access credentials based on the command.  For example, iApartments' "smart lock" utilizes a processor when receiving a command via a non-WAN communication link (*e.g.*, a Z-wave communication link) and modifying stored access credential validation information to disable the one or more access credentials based on the command to, for example, disable temporary access previously granted to a vendor, guest, or the like.  This feature is further described below.



# Free up your staff with keyless access

When leasing teams spend less time managing physical keys they can spend more time leasing apartments.

- Show vacant units with temporary smart lock credentials
- Eliminate key releases for site team and staff
- Complete property-wide inspections in half the time



31.    iApartments was aware of the '273 Patent no later than August 6, 2021, based on the letter sent by Plaintiffs' counsel notifying iApartments of its infringement of at least claim 1 of the '273 Patent.  Additional communications between the two parties further evidence iApartments' knowledge of the '273 Patent.

32.    On information and belief, since at least the time iApartments received such notice, it has induced and continues to induce infringement of the '273 Patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe the '273 Patent, including, but not limited to, iApartments' partners, clients, customers, and end users, whose use of one or more of iApartments' Accused Products infringes at least claims 1, 18, and 26 of the '273 Patent.

33.    iApartments' actions that aid and abet others, such as its partners, customers, clients, and end users, to infringe include advertising and distributing iApartments' Accused Products, providing instruction materials, training, and

services regarding the Accused Products, including user guides and the like,[1] and/or providing software for use with one or more of the Accused Products.    On information and belief, iApartments has engaged in such actions with specific intent to cause infringement or with willful blindness to resulting infringement because iApartments had knowledge of the '273 Patent and knowledge that its acts induce infringement of the '273 Patent.

34.    iApartments' acts of induced infringement of the '273 Patent are committed with knowledge of Plaintiffs' rights in the '273 Patent.  iApartments' infringement is willful and deliberate, entitling Plaintiffs to enhanced damages under 35 U.S.C. § 284 and reasonable attorneys' fees and costs.

35.    iApartments has and continues to contributorily infringe the '273 Patent under 35 U.S.C. § 271(c).  With knowledge of the '273 Patent, iApartments has sold, sells, offers to sell, has imported and/or is importing into the United States one or more of iApartments' Accused Products to be especially made or adapted for use in infringing the '273 Patent.  The Accused Products are a material component for use in practicing the '273 Patent and are specifically made and are not a staple article of commerce suitable for substantial noninfringing use.  Use of the Accused Products

---

[1]    *See, e.g.*, iApartments Support, https://support.iapts.com/support/home (last visited Jan. 28, 2022); iApartments, Inc.'s Terms Of Use, https://www.iapts.com/terms/.

by iApartments' partners, clients, customers, and end users infringes at least claims 1, 18, and 26 of the '273 Patent.

36.    iApartments' acts of contributory infringement of the '273 Patent are committed with knowledge of Plaintiffs' rights in the '273 Patent.  On information and belief, iApartments continues to act with knowledge that its actions constitute contributory infringement of a valid patent.  iApartments' infringement is willful and deliberate, entitling Plaintiffs to enhanced damages under 35 U.S.C. § 284 and reasonable attorneys' fees and costs.

37.    The inventions claimed in the '273 Patent are not directed to an abstract idea.  For instance, the claims recite specific systems and methods that improve the functionality of devices used within multi-family residential properties, and also improve property management of such multi-family residential properties.  Such claimed improvements allow a user, such as a property manager or property maintenance personnel, to remotely manage smart devices in a multi-family residential property, while also improving security, communication, and ease of implementation in carrying out such property management.

38.    The claimed inventions also include additional, non-conventional, and non-generic elements and combinations thereof that, for instance, provide the aforementioned improvements to smart device functionalities in multi-family residential properties and management of same.

**B.    COUNT TWO: iAPARTMENTS' INFRINGEMENT OF THE '685 PATENT**

39.    Plaintiffs incorporate by reference paragraphs 1-17 as if fully set forth herein.

40.    iApartments has been and continues to directly infringe one or more claims of the '685 Patent by making, using, offering to sell, selling, and/or importing a system that practices one or more claims of the '685 Patent, literally or under the doctrine of equivalents.

41.    Independent claim 1 of the '685 Patent recites:

A system for securing smart devices within an apartment of a multi-family residential property, the system comprising:

an offline door lock comprising:

a locking mechanism;

a sensor configured to receive access credential information from a credential device placed in proximity to the sensor;

a first memory storing access credential validation information;

a lock processor configured to:

determine validity of the received access credential information based on the stored access credential validation information; and

selectively engage the locking mechanism if the received access credential information is determined to be valid; and

a smart thermostat hub comprising:

one or more processors;

a second memory communicatively coupled to the one or more processors;

a first interface configured to communicatively couple the one or more processors to a property management platform via a Long Range (LoRa) wide area network (LoRaWAN) communication link; and

a second interface configured to communicatively couple the one or more processors to the offline door lock via a non-LoRaWAN communication link;

where the one or more processors are configured to:

> receive control information associated with the offline door lock from the property management platform via the LoRaWAN communication link where the control information identifies one or more access credentials to be disabled with respect to the offline door lock,

> generate a command configured to disable the one or more access credentials identified in the control information; and

> transmit the command to the offline door lock via the non-LoRaWAN communication link,

where the lock processor is configured to receive the command via the non-LoRaWAN communication link and to modify the stored access credential validation information to disable the one or more access credentials based on the command.

42.     iApartments Accused Products utilize a smart hub and smart lock, operating according to, e.g., disable user access to a multi-family or commercial property.

43.     iApartments' Accused Products comprise systems for securing smart devices within an apartment of a multi-family residential property.  Specifically, as

described on iApartments' website, "iApartments is [a] set of technology infrastructure integrated into a multifamily community allowing for a variety of services that give greater convenience and control to the residents while making property management and maintenance more efficient." iApartments' Accused Products are further described below.



44.    iApartments' Accused Products include every feature of claim 1, which is representative of claims 15 and 20.  For example, iApartments' Accused Products comprise an offline door lock, as described below.

## Smart Lock





Smart Lock

**FAQ** (4)                                              **How To** (4)

📖 Do my guests need to download the iApa...    📖 Inviting a Guest User

📖 What can I do if I am locked out?            📖 Using your Front Door Lock

📖 What are the two random numbers that a...    📖 Viewing & Removing Users

📖 How long to batteries in my Front Door L...   📖 Viewing and editing your Front Door Lock...

45.    The offline lock comprises a locking mechanism, as described below.

## Smart Lock





46.    The offline lock further comprises a sensor configured to receive access credential information from a credential device placed in proximity to the sensor, as described below.



47.     The offline lock also comprises a first memory storing access credential validation information.   This feature enables, for example, iApartments' "smart lock" to allow temporary access to a vendor, guest, or the like, as shown below.



**Next-gen access control for smart apartments**

A seamless access experience combined with increased security. By simply using their smartphone, residents can move freely about the apartment community. And by sharing exclusive, temporary codes, so can their guests.

48.     The offline lock also comprises a processor configured to determine validity of received access credential information from a credential device based on the stored access credential validation information and selectively engage the locking mechanism if the received access credential information is determined to be valid.   As described on iApartments' website, the lock process selectively engages the locking mechanism if the received access credential information is determined to be valid to, for example, enable temporary access to a vendor, guest, maintenance personnel, or the like.   iApartments' Accused Products are further described below.



49.    iApartments' Accused Products also comprise a smart device hub comprising one or more processors and a second memory communicatively coupled to the one or more processors.  For example, iApartments' "smart hub thermostat" utilizes a processor in performing its stated functions and memory in performing its stated functions.  The smart device hub thermostat operates as a smart hub for devices, as further described below.



**SMART HUB THERMOSTAT**

Allows you to control your home temperature, smart lights, smart locks and other devices right from your phone.

SMART HUB THERMOSTAT

## Command center for temperature and more

**It's a Smart Hub**
Control all smart devices like smart locks, lighting, switches, and sensors from one in-unit point powered by next generation cellular for an always-on connection.

**It's a Smart Thermostat**
Keep energy bills down and convenience up with personalize and remote climate controls.

**It's That Easy**
Residents control their home's climate, front door lock, and all smart devices from anywhere. Management can control vacant units automatically without the need for a redundant hub device.

50.    The smart device hub also comprises a first interface configured to communicatively couple the one or more processors to a property management platform via a Long Range (LoRa) wide area network (LoRaWAN) communication link.  For example, the iApartments smart hub thermostat is by default connected to a Long-Term Evolution (LTE) connection.  To be communicatively coupled to the LTE connection (an LTE communication link), the iApartments smart hub thermostat includes a respective first interface configured to communicatively couple the smart hub thermostat (and the one or more processors thereof) to the LTE

communication link.  In particular, the iApartments smart hub thermostat uses a LTE-M (LTE CAT M) connection.  LTE-M and Long Range Wide Area Network (LoRaWAN) are both low power, wide area network (LPWAN) communication technologies for providing devices, such as smart devices, with long range wide area network/Internet connections.  iApartments also advertises use of LoRaWAN in products and requests job seekers possess knowledge of the protocol, as described below.



iApartments
263 followers

+ Follow

Information Technology & Services • 11-50 employees • 20 on LinkedIn

iApartments (Intelligent Apartments) offers a best-in-class, smart home platform providing enterprise-level asset protection, energy management, and access and comfort control features to multifamily properties. From conventional apartments to student housing and senior living, iApartments employs CAT-M1 cellular technology to deliver an easier and more affordable connection to the cloud without a dedicated Wi-Fi or high-voltage network. iApartments has cracked the code to bring a new approach to the "smart community" experience and better serve the needs of owners, managers, and their residents. Founded in 2018, iApartments is currently deploying nationwide driven by its leadership team that includes multifamily, IoT, and smart-home industry veterans with 100+ years of combined experience.

- Good Implementation knowledge on Communication Protocols like Z-wave, Zigbee, LTE, Bluetooth, Wi-Fi, and LoRaWAN

51.    iApartments' Terms of Use states the following:

Users' ability to access and use the functionalities of the Products and Services is dependent upon an uninterrupted connection to iApartments and/or the iApartments Devices and related equipment, via a variety of means including, but not limited to, ethernet, Bluetooth, Wi-Fi, Z-Wave, Local Area Networks, Dial-Up, DSL, LoRa, LoRaWan, routers, modems, wireless hotspots, Satellite, and/or ISDN with such connection functionalities included and built into the Products and Services provided to Users and/or otherwise maintained at an apartment facility, building, and/or certain space (collectively the "Connections")."

52.     The smart device hub comprises a second interface configured to communicatively couple the one or more processors to the offline door lock via a non-WAN communication link.   Z-wave, Zigbee, and Bluetooth communication links are examples of non-LoRaWAN communication links, and these communications links are described below.

Z-WAVE

| | |
|---|---|
| Model No. of antenna: | N/A |
| Type of antenna: | Helical antenna |
| Gain of the antenna: | -3.7dBi |
| Frequency range: | 902-928 MHz |

Application: iApartments Thermostat Node

Equipment Class: DXX - Part 15 Low Power Cc

Alternate Sources: FCC.gov | FCC.report

Registered By: iApartments, LLC - 2AVIH (Unit

you@youremail.com    Subscribe

| App # | Purpose |
|---|---|
| 1 | Original Equipment |
| 2 | Original Equipment |

### Operating Frequencies

**Frequency Range**

916 MHz



53. iApartments' smart device hub is configured to receive control information associated with the offline door lock from the property management platform via the LoRaWAN communication link where the control information identifies one or more access credentials to be disabled with respect to the offline door lock. The one or more processors are also configured to generate a command configured to disable the one or more access credentials identified in the control information and to transmit the command to the offline door lock via the non-LoRaWAN communication link. For example, iApartments' "smart hub thermostat" utilizes a processor when performing the corresponding the claim steps to, for example, enable temporary access to a vendor, guest, or the like. Further, performance of the corresponding claim steps is required for the smart hub

thermostat and the smart lock to operate according to the Z-wave standard. Additional details regarding this feature is below.



**SMART HUB THERMOSTAT**

Allows you to control your home temperature, smart lights, smart locks and other devices right from your phone.

54.    The lock processor of iApartments' offline door lock is also configured to receive the command via the non-LoRaWAN communication link and to modify the stored access credential validation information to disable the one or more access credentials based on the command.  For example, iApartments' "smart lock" utilizes a processor when receiving a command via a non-LoRaWAN communication link (*e.g.*, a Z-wave communication link) and modifying stored access credential validation information to disable the one or more access credentials based on the command to, for example, disable temporary access previously granted to a vendor, guest, maintenance personnel, or the like, as further described below.



# Free up your staff with keyless access

When leasing teams spend less time managing physical keys they can spend more time leasing apartments.

- Show vacant units with temporary smart lock credentials
- Eliminate key releases for site team and staff
- Complete property-wide inspections in half the time



55.     iApartments was aware of the '273 Patent no later than August 6, 2021. Additional communications between the two parties evidence iApartments' knowledge of the '685 Patent no later than September 15, 2021..

56.     On information and belief, since at least the time iApartments became aware of the '685 Patent, it induced and continues to induce infringement of the '685 Patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others, including, but not limited to, iApartments' partners, clients, customers, and end users to infringe at least claims 1, 15, and 20 of the '685 Patent.

57.     iApartments' actions that aid and abet others, such as its partners, customers, clients, and end users, to infringe include advertising and distributing iApartments' Accused Products, providing instruction materials, training, and services regarding the Accused Products, including user guides and the like,[2] and/or providing software for use with one or more of the Accused Products.    On

---

[2]     *See, e.g.*, iApartments Support, https://support.iapts.com/support/home (last visited Jan. 28, 2022); iApartments, Inc.'s Terms Of Use, https://www.iapts.com/terms/.

information and belief, iApartments has engaged in such actions with specific intent to cause infringement or with willful blindness to resulting infringement because iApartments had knowledge of the '685 Patent and knowledge that its acts induce infringement of the '685 Patent.

58.    iApartments' acts of induced infringement of the '685 Patent are committed with knowledge of Plaintiffs' rights in the '685 Patent.  On information and belief, iApartments continues to act with knowledge that its actions constitute induced infringement of a valid patent.  iApartments' infringement is willful and deliberate, entitling Plaintiffs to enhanced damages under 35 U.S.C. § 284 and reasonable attorneys' fees and costs.

59.    iApartments has and continues to contributorily infringe the '685 Patent under 35 U.S.C. § 271(c).  With knowledge of the '685 Patent, iApartments has sold, sells, offers to sell, has imported and/or is importing into the United States one or more of iApartments' Accused Products to be especially made or adapted for use in infringing the '685 Patent.  The Accused Products are a material component for use in practicing the '685 Patent and are specifically made and are not a staple article of commerce suitable for substantial noninfringing use.  Use of the Accused Products by iApartments' partners, clients, customers, and end users infringes at least claims 1, 15, and 20 of the '685 Patent.

60.     iApartments' acts of contributory infringement of the '685 Patent are committed with knowledge of Plaintiffs' rights in the '685 Patent. On information and belief, iApartments continues to act with knowledge that its actions constitute contributory infringement of a valid patent. iApartments' infringement is willful and deliberate, entitling Plaintiffs to enhanced damages under 35 U.S.C. § 284 and reasonable attorneys' fees and costs.

61.     The inventions claimed in the '685 Patent are not directed to an abstract idea. For instance, the claims recite specific systems and methods that improve the functionality of devices used within multi-family residential properties, and also improve property management of such multi-family residential properties. Such claimed improvements allow a user, such as a property manager or property maintenance personnel, to remotely manage smart devices in a multi-family residential property, while also improving security, communication, and ease of implementation in carrying out such property management.

62.     The claimed inventions also include additional, non-conventional, and non-generic elements and combinations thereof that, for instance, provide the aforementioned improvements to smart device functionalities in multi-family residential properties and management of same.

- 35 -

C.    **COUNT THREE:  iAPARTMENTS' INFRINGEMENT OF THE '118 PATENT**

63.    Plaintiffs incorporate by reference paragraphs 1-17 as if fully set forth herein.

64.    iApartments has been and continues to directly infringe one or more claims of the '118 Patent by making, using, offering to sell, selling, and/or importing a system that practices one or more claims of the '118 Patent, literally or under the doctrine of equivalents.

65.    Independent claim 1 of the '118 Patent recites:

> A system for controlling and securing a plurality of smart devices within a unit of a multi-family residential or commercial property, the system comprising:
>
>> a smart hub comprising:
>>
>>> one or more processors;
>>>
>>> a memory communicatively coupled to the one or more processors;
>>>
>>> a first communication interface configured to communicatively couple the one or more processors to a Long Range (LoRa) wide area network (LoRaWAN) communication link; and
>>>
>>> a second communication interface configured to communicatively couple the one or more processors to the plurality of smart devices and to a user device associated with an occupant of the unit via a non-LoRaWAN communication link;
>>
>> where the one or more processors are configured to:

receive control information via the LoRaWAN communication link from a property management platform for the multi-family residential or commercial property, the control information including a request for a status check associated with an electronic door lock,

identify at least one smart device of the plurality of smart devices based on the control information, the at least one smart device including the electronic door lock,

transmit a command derived from the control information to the at least one smart device via the non-LoRaWAN communication link,

receive status information from the electronic door lock via the non-LoRaWAN communication link based on transmission of the command, and

transmit the status information to the property management platform for the multi-family residential or commercial property via the LoRaWAN communication link.

66.    iApartments Accused Products utilize a smart hub thermostat and smart lock, operating according to the Z-wave standard, to retrieve a status of the smart lock at a multi-family or commercial property, and the status is provided using long range communications to a property management software or a user device (such as for display to a user).

67.    iApartments' Accused Products comprise a system for controlling and securing a plurality of smart devices within a unit of a multi-family residential or commercial property.  For example, the iApartments system includes a smart hub thermostat that enables residents to "control your home temperature" (thermostat)

"smart lights, smart locks, and other devices . . . ."  The smart lights, smart locks, smart switches, and sensors are a plurality of smart devices that are controlled and secured by the iApartments system.  The iApartments system is "multifamily smart home technology" which is used at a multi-family residential property, and iApartments describes their products as providing results for "multifamily properties."  iApartments' Accused Products are further described below.



### Smarter living taken to another level

When everything just works, a resident's life becomes stress-free.



**SMART HUB THERMOSTAT**

Allows you to control your home temperature, smart lights, smart locks and other devices right from your phone.



**FULLY CONNECTED ENVIRONMENT**

A fully connected smart home uses automation to simplify your life and adds peace-of-mind knowing you can see and control the most important devices 24/7.



**GRANT GUEST ACCESS**

Residents can issue one time or multiple use codes to let in family, friends, the dog walker and more without providing a key that can easily be replicated.



**IMPROVED ENERGY COSTS**

Mobile access to your home's lights and thermostat allow you to adjust the temperature when your away and turn off lights with a click of a button.

## Multifamily smart home technology that works

iApartments is an enterprise-level smart home platform that turns ordinary apartments into intelligent apartments. Our smart technology automates asset protection, access control, and operational efficiencies for multifamily property owners, managers, and their residents.

**Real results from real multifamily properties**
Check out our client case study

CASE STUDY

68.    iApartments' Accused Products include every feature of claim 1, which is representative of claims 11 and 17.  For example, and as described below, the iApartments' smart hub thermostat operates as a smart hub ("It's a Smart Hub") that

controls thermostat as well as "smart devices like smart locks, lighting, switches, and sensors . . . ."



69.    The iApartments smart hub thermostat comprises one or more processors and a memory communicatively coupled to the one or more processors. For example, to perform the operations described on their website, the iApartments smart hub thermostat includes one or more processors and a memory communicatively coupled to the one or more processors.

70.    The iApartments smart hub thermostat also comprises a first communication interface configured to communicatively couple the one or more processors to a Long Range (LoRa) wide area network (LoRaWAN) communication link.  For example, the iApartments smart hub thermostat is by default connected to a Long-Term Evolution (LTE) connection.  To be communicatively coupled to the LTE connection (an LTE communication link), the iApartments smart hub thermostat includes a respective first interface configured to communicatively

couple the smart hub thermostat (and the one or more processors thereof) to the LTE communication link.  In particular, the iApartments smart hub thermostat uses a LTE-M (LTE CAT M) connection.  LTE-M and Long Range Wide Area Network (LoRaWAN) are both low power, wide area network (LPWAN) communication technologies for providing devices, such as smart devices, with wide area network/Internet connections.  This feature is further described below.



71.     Moreover, the iApartments' Terms of Use state that that "Users' ability to access and use the functionalities of the Products and Services is dependent upon an uninterrupted connection to iApartments and/or the iApartments Devices and related equipment, via a variety of means including, but not limited to, Ethernet, Bluetooth, Wi-Fi, Z-Wave, Local Area Networks, Dial-Up, DSL, LoRa, LoRaWan, routers, modems, wireless hotspots, Satellite, and/or ISDN with such connection functionalities included and built into the Products and Services provided to Users and/or otherwise maintained at an apartment facility, building, and/or certain space (collectively the "Connections")."  As iApartments states that its Accused Products support LoRa and LoRaWAN, and both LoRaWAN and LTE-M are LPWAN communications technologies, the LoRaWAN connection described here is contemplated for use as a communication link for smart devices, such as the iApartments smart hub thermostat.

72.     The iApartments smart hub thermostat also comprises a second communication interface configured to communicatively couple the one or more processors to the plurality of smart devices and to a user device associated with an occupant of the unit via a non-LoRaWAN communication link.  For example, the iApartments system includes the smart hub thermostat and an ecosystem of different smart devices (the plurality of smart devices), such as smart locks, smart sensors,

smart devices, and voice controllers.  Such smart devices can communicate using

non-LoRaWAN communications, such as Z-Wave, Bluetooth, or Wi-Fi:

### An ecosystem of automation for comfort, convenience, and peace of mind

iApartments smart products can be installed in new construction or retrofitted into existing assets. There are no limitations to bringing technology to the residents at any stage of a property's life.

| Smart Hub Thermostat | Smart Lock | Smart Sensors | Smart Devices | Voice Control |
| --- | --- | --- | --- | --- |

    

SMART DEVICES & ADD ONS

## The perfect light for movie night and more

**Smart lighting. Smart devices. Smart experience.**

Smart plugs and smart switches allow residents to automate power on/off control of lighting or other wired appliances. Further personalize your smart home experience by adding smart devices like Amazon Echo Dot – all controlled by the iApartments app.

| Smart Plugs | Smart Switches | Alexa |
| --- | --- | --- |



**"Alexa I'm home."** Voice activated personal assistants enable residents to program lighting, music and temperature. Their apartment is always comfy and cozy the moment they walk through the door.

**DOWNLOAD THE iAPARTMENTS APP**

## Smarter living on another level

With the iApartments app, the conveniences of modern living are right at your resident's fingertips. They are in full control of their apartment's thermostat, able to turn lights on and off, and able to make sure the front door is locked from anywhere. Add on iApartment's white-glove service and support and everything just works.

73.    Moreover, the iApartments Smart plugs and smart lights/switches are controlled by the iApartments app.  For example, iApartments' Terms of Use state that "Users' ability to access and use the functionalities of the Products and Services is dependent upon an uninterrupted connection to iApartments and/or the iApartments Devices and related equipment, via a variety of means including, but not limited to, Ethernet, Bluetooth, Wi-Fi, Z-Wave, Local Area Networks, Dial-Up, DSL, LoRa, LoRaWan, routers, modems, wireless hotspots, Satellite, and/or ISDN with such connection functionalities included and built into the Products and Services provided to Users and/or otherwise maintained at an apartment facility, building, and/or certain space (collectively the "Connections")."  Bluetooth, Wi-Fi, and Z-Wave are non-LoRaWAN communication protocols.  To be communicatively coupled to Z-Wave (or another non-LoRaWAN communication link), the iApartments smart hub thermostat includes a respective second interface configured to communicatively couple the smart hub thermostat (and the one or more processors

thereof) to the plurality of smart devices via a non-LoRaWAN communication link.

This feature is further described below.



74.    iApartments' smart hub thermostat can be connected to a Wi-Fi

network and user device can also be communicatively coupled to the Wi-Fi network.

To be communicatively coupled to the Wi-Fi network, the second interface of the

iApartments smart hub thermostat is configured to communicatively couple the

smart hub thermostat (and the one or more processors thereof) to the user device via the Wi-Fi network (a non-LoRaWAN communication link).

75.    iApartments' smart hub thermostat is configured to receive control information via the LoRaWAN communication link from a property management platform for the multi-family residential or commercial property, the control information including a request for a status check associated with an electronic door lock.  The iApartments smart hub thermostat includes one or more processors that are configured to perform the operations described on the website.  iApartments is developing integration with property management software (PMS), which would be executed by a property management platform.  As management of smart assets are described, this management includes the management of smart door locks, smart lights, and the like, described with respect to the iApartments app (the iApartments app, or a property management software version, can be executed at a resident's user device and a property management platform, respectively), as further described below.

PROPERTY MANAGEMENT SOFTWARE

## Smart home technology that connects to your favorite PMS

iApartments customized options allows you to connect to your favorite property management software to create a simple workflow. Manage all of your smart assets from one place.

76.    Moreover, the iApartments app displays a user interface (UI) at the user device (similar to property management software UI when integrated), and the UI displays a status (locked or unlocked) of a smart lock.  In order to display the status, status information (indicating a locked or unlocked status) must be provided to the mobile device/property management platform, as further described below.



77.    iApartments smart hub thermostat communicates and controls the smart door lock (an electronic door lock).  Such communication and control includes retrieving status information to determine the status of the smart door lock.  The smart hub thermostat is "powered by next generation cellular for an always-on connection."  Accordingly, to communicate with the iApartments app (the user device or the property management platform), the smart thermostat hub

communicates via a cellular communication link. As this is the only described communication link between the smart hub thermostat and iApartments app, in order to display a status of a smart lock, the iApartments app necessarily sends a status request to the smart hub thermostat via the cellular/LTE connection, and the smart hub thermostat receives, via the cellular/LTE connection, control information including a request for a status check associated with the smart door lock. The LTE-M connection is also contemplated by iApartments as being implemented using LoRaWAN, as both are LPWAN communication links. This feature is further described below.



78.    iApartments' smart hub thermostat is also configured to identify at least one smart device of the plurality of smart devices based on the control information, the at least one smart device including the electronic door lock. Specifically, to control multiple types of smart devices, the iApartments smart hub thermostat identifies at least one smart device to control based on a received

request/instruction/control information.  The identified smart device can be a smart lock (an electronic lock) – "Control all smart devices like smart locks . . . ."  And, residents control access [to a door lock] via the iApartments app.  This feature is further described below.



79.    iApartments' smart thermostat hub is also configured to transmit a command derived from the control information to the at least one smart device via the non-LoRaWAN communication link.  For example, the iApartments smart hub thermostat is able to "Control all smart devices like smart locks, lighting, switches, and sensors . . . ."  To control a smart device, the smart hub thermostat transmits a command to the smart device.  To enable the iApartments app to control the smart

device, the command is derived from control information received by the smart hub thermostat from the iApartments app (the user device/property management platform). This feature is further described below.





80. To communicate and control the smart devices, the smart hub thermostat sends, e.g., commands to the smart devices using a non-LoRaWAN communication link (a communication link that is different from the LTE/cellular communication link between the smart hub thermostat and the iApartments app).

The non-LoRaWAN communication link may be Bluetooth, Z-Wave, and/or Wi-Fi, which iApartments state that their products support, as described below.

**Connections To iApartments Devices**

Users' ability to access and use the functionalities of the Products and Services is dependent upon an uninterrupted connection to iApartments and/or the iApartments Devices and related equipment, via a variety of means including, but not limited to, ethernet, Bluetooth, Wi-Fi, Z-Wave, Local Area Networks, Dial-Up, DSL, LoRa, LoRaWan, routers, modems, wireless hotspots, Satellite, and/or ISDN with such connection functionalities included and built into the Products and Services provided to Users and/or otherwise maintained at an apartment facility, building, and/or certain space (collectively the "Connections"). You agree not to use or seek to alter or access the Connections provided to you via the Products and Services for any purpose that is unlawful or prohibited by this Agreement and you may not use the Connections in any manner that could damage anyone's property or otherwise interferes with, harms or disrupts the Products and Services and/or other Users' ability to use of the Products and Services. In addition to the foregoing, Users hereby consent and agree to allow the iApartments' Devices to access and temporarily use, when reasonably necessary to maintain an uninterrupted connection to the cloud or iApartments, any other means of network access that is available via the Connections provided by or accessible to any other iApartments Devices.  Such temporary access and use of any network access Connections by iApartments Devices shall only be for purposes of maintaining the continuity and functionality of the Products and Services.

81.    The one or more processors of iApartments' smart thermostat hub are also configured to receive status information from the smart door lock (an electronic door lock) via the non-LoRaWAN communication link based on transmission of the command.  To control the smart devices, the iApartments smart hub thermostat communicates with the smart devices via their communication link (the non-LoRaWAN communication link).  Because the smart devices include smart sensors, the smart hub thermostat can perform bi-directional communications with the smart devices.  The smart hub thermostat may receive information, such as status information, from the smart door lock to provide to the iApartments app for enabling display of the status.  The status information is received via the non-LoRaWAN communication link coupling the smart hub thermostat to the smart door lock, which may be Z-Wave, Bluetooth, and/or Wi-Fi, as described below.




Smart Hub Thermostat


Smart Lock


Smart Sensors


Smart Devices


Voice Control

82.    The one or more processors of iApartments' smart hub thermostat are further configured to transmit the status information to the property management platform for the multi-family residential or commercial property via the LoRaWAN communication link.  For example, to display the status of the smart door lock via the UI, the iApartments app must receive the status information.  Because a connection between the iApartments app and the smart hub thermostat is a LTE/cellular connection (the LoRaWAN communication link), the smart hub thermostat transmits the status information to the iApartments app (the user

device/property management platform) via the LTE/cellular connection.  The UI is shown below.



83.    iApartments was aware of the '273 Patent no later than August 6, 2021. Additional communications between the two parties evidence iApartments' knowledge of the '118 Patent's claims no later than September 15, 2021, i.e., when iApartments' counsel specifically referenced U.S. Patent Application Number 16/912,370 (which later issued as the '118 Patent).  Plaintiffs' counsel also provided a claim chart illustrating how the Accused Products include every feature of claim 1 of the '118 Patent to iApartments' counsel on January 7, 2022..

84.    On information and belief, since at least the time iApartments became aware of the '118 Patent, it induced and continues to induce infringement of the '118 Patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or

willful blindness, actively aiding and abetting others, including, but not limited to, iApartments' partners, clients, customers, and end users to infringe at least claims 1, 11, and 17 of the '118 Patent.

85.    iApartments' actions that aid and abet others, such as its partners, customers, clients, and end users, to infringe include advertising and distributing iApartments' Accused Products, providing instruction materials, training, and services regarding the Accused Products, including user guides and the like,[3] and/or providing software for use with one or more of the Accused Products.  On information and belief, iApartments has engaged in such actions with specific intent to cause infringement or with willful blindness to resulting infringement because iApartments had knowledge of the '118 Patent and knowledge that its acts induce infringement of the '118 Patent.

86.    iApartments' acts of induced infringement of the '118 Patent are committed with knowledge of Plaintiffs' rights in the '118 Patent.  On information and belief, iApartments continues to act with knowledge that its actions constitute induced infringement of a valid patent.  iApartments' infringement is willful and deliberate, entitling Plaintiffs to enhanced damages under 35 U.S.C. § 284 and reasonable attorneys' fees and costs.

---

[3]    *See, e.g.*, iApartments Support, https://support.iapts.com/support/home (last visited Jan. 28, 2022); iApartments, Inc.'s Terms Of Use, https://www.iapts.com/terms/.

87.    iApartments has and continues to contributorily infringe the '118 Patent under 35 U.S.C. § 271(c).  With knowledge of the '118 Patent, iApartments has sold, sells, offers to sell, has imported and/or is importing into the United States one or more of iApartments' Accused Products to be especially made or adapted for use in infringing the '118 Patent.  The Accused Products are a material component for use in practicing the '118 Patent and are specifically made and are not a staple article of commerce suitable for substantial noninfringing use.  Use of the Accused Products by iApartments' partners, clients, customers, and end users infringes at least claims 1, 11, and 17 of the '118 Patent.

88.    iApartments' acts of contributory infringement of the '118 Patent are committed with knowledge of Plaintiffs' rights in the '118 Patent.  On information and belief, iApartments continues to act with knowledge that its actions constitute contributory infringement of a valid patent.  iApartments' infringement is willful and deliberate, entitling Plaintiffs to enhanced damages under 35 U.S.C. § 284 and reasonable attorneys' fees and costs.

89.    The inventions claimed in the '118 Patent are not directed to an abstract idea.  For instance, the claims recite specific systems and methods that improve the functionality of devices used within multi-family residential properties, and also improve property management of such multi-family residential properties.  Such claimed improvements allow a user, such as a property manager or property

maintenance personnel, to remotely manage smart devices in a multi-family residential property, while also improving security, communication, and ease of implementation in carrying out such property management.

90.    The claimed inventions also include additional, non-conventional, and non-generic elements and combinations thereof that, for instance, provide the aforementioned improvements to smart device functionalities in multi-family residential properties and management of same.

**D.    COUNT FOUR:  FALSE ADVERTISING – LANHAM ACT 15 U.S.C. § 1125(a)**

91.    Plaintiffs incorporate by reference paragraphs 1-17 as if fully set forth herein.

92.    Plaintiffs are competitors of iApartments because the parties advertise and sell a good or service generally described as smart hub technology for multifamily homes in interstate commerce.

93.    iApartments has advertised that its smart hub product ("Smart Hub Thermostat") is the "industry-first All-In-One Smart Hub Thermostat," that it brings "a new approach to the 'smart community' experience," and that it is the "only Smart Home Technology company built and run by 20 year multifamily veterans."

94.    iApartments' aforementioned advertisements are false or misleading.

95.    iApartments' aforementioned advertisements deceived, or had the capacity to deceive, consumers.

96.     iApartments' aforementioned deceptive advertisements had a material effect on consumer purchasing decisions.

97.     iApartments' aforementioned deceptive advertisements affected interstate commerce.

98.     Because Plaintiffs are the actual originators of smart hub technology for multifamily homes, iApartments' false advertising wrongly attributes credit for creation of the technology to iApartments, and wrongly represents that its company leadership has more experience in the industry than Plaintiffs' leadership, to the injury of Plaintiffs.

99.     iApartments' deceptive advertisements that its Smart Hub Thermostat is an "industry-first" and that it brings "a new approach to the 'smart community' experience" were, on information and belief, made in bad faith because iApartments was formed in 2019 and it had knowledge of the Asserted Patents, which were filed with the U.S. Patent & Trademark Office ("USPTO") before iApartments was formed.

100.   iApartments knew no later than August 6, 2021, that the Asserted Patents, which cover products and services offered by iApartments, were issued on October 13, 2020, November 3, 2020, and November 30, 2020, respectively. Further, iApartments' deceptive advertisement that it is the "only Smart Home Technology company built and run by 20 year multifamily veterans" was made in

bad faith because iApartments' knew that Plaintiffs' leadership has as much or more experience in the multifamily industry.

## E.    COUNT FIVE:    UNFAIR COMPETITION – FLORIDA COMMON LAW

101.    Plaintiffs incorporate by reference paragraphs 1-17 as if fully set forth herein.

102.    Plaintiffs are competitors of iApartments because the parties advertise and sell a good or service generally described as smart hub technology for a common pool of customers.

103.    iApartments has engaged in deceptive and fraudulent conduct by advertising that its product is the "industry-first All-In-One Smart Hub Thermostat," that it brings "a new approach to the 'smart community' experience," and that it is the "only Smart Home Technology company built and run by 20 year multifamily veterans."

104.    iApartments knew or should have known of the falsity of the aforementioned misrepresentations.

105.    iApartments intended that the misrepresentations would induce another to rely and act on them.

106.    iApartments' misrepresentations have caused or are likely to cause consumer confusion.

107.   iApartments' misrepresentations that its Smart Hub Thermostat is the "industry-first" and brought a "new approach" to the "smart community experience" were made in bad faith and with malice or reckless indifference to Plaintiffs' and consumers' interests because iApartments was formed in 2019 and knew no later than August 6, 2021, that the Asserted Patents, which cover the Accused Products, were filed with the USPTO before iApartments was formed.

108.   The Asserted Patents issued on October 13, 2020, November 3, 2020, and November 30, 2020, respectively.  iApartments' misrepresentation that it is the "only Smart Home Technology company built and run by 20 year multifamily veterans" was made in bad faith and with malice or reckless indifference to Plaintiffs' and consumers' interests because it knows that Quext's leadership has even more experience in the multifamily industry than iApartments' leadership.

109.   Plaintiffs' suffered injury as a result of the misrepresentations.

## VI.  DEMAND FOR JURY TRIAL

110.   Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all issues triable of right by a jury.

## VII.  PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for the entry of a judgment from this Court as follows:

1.    Judgment in Plaintiffs' favor and against Defendant on all causes of action alleged herein;

2.    A preliminary and/or permanent injunction restraining Defendant, and its agents, servants, employees, attorneys, successors and assigns, and all persons, firms, and corporations acting in concert with it, from directly or indirectly violating Plaintiffs' patent rights.

3.    For damages in an amount to be proven at trial, including but not limited to:

    a.  Damages under 35 U.S.C. § 284, including enhancement and including supplemental damages for any continuing post-verdict infringement up until entry of final judgment, with an accounting, as necessary;

    b.  For Plaintiffs' reasonable and necessary attorney's fees;

    c.  For costs of suit incurred herein, including all disbursements;

    d.  For pre-judgment and post-judgment interest on the damages awarded;

    e.  If an injunction is not granted, that Plaintiffs be awarded an ongoing licensing fee; and

    f.  For such other and further relief, in law or in equity, as the Court may deem to be just and proper.

Dated: February 7, 2022                Respectfully submitted,

                                       */s/ Brian R. Gilchrist*
                                       Brian R. Gilchrist, FL Bar #774065
                                       bgilchrist@allendyer.com
                                       ALLEN, DYER, DOPPELT + GILCHRIST, PA
                                       255 S. Orange Avenue, Suite 1401
                                       Post Office Box 3791
                                       Orlando FL 32802-3791
                                       Telephone:  (407) 841-2330
                                       Facsimile:  (407) 841-2343

                                       Robert Greeson, Texas Bar No. 24045979
                                       (pro hac vice motion forthcoming)
                                       robert.greeson@nortonrosefulbright.com
                                       NORTON ROSE FULBRIGHT US LLP
                                       2200 Ross Avenue, Suite 3600
                                       Dallas, Texas 75201-2784
                                       Telephone: (214) 855-8000
                                       Facsimile:  (214) 855-8200

                                       Erik Janitens, Texas Bar No. 24097878
                                       (pro hac vice motion forthcoming)
                                       erik.janitens@nortonrosefulbright.com
                                       NORTON ROSE FULBRIGHT US LLP
                                       1301 McKinney, Suite 5100
                                       Houston, Texas 77010-3095
                                       Telephone: (713) 651-5151
                                       Facsimile:  (713) 651-5246

                                       *Attorneys for Plaintiffs,*
                                       *EDST, LLC and Quext IoT, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on February 7, 2022, I presented the foregoing to the Clerk of the Court for filing and uploading to the Case Management/Electronic Case Filing ("CM/ECF") system which will send a Notice of Electronic Filing to the following CM/ECF participants:

Dean A. Kent, Esq.
dkent@trenam.com
TRENAM LAW
101 East Kennedy Blvd., Ste. 2700
Tampa, FL  33602
*Attorneys for Defendant,*
*iApartments, Inc.*

*/s/ Brian R. Gilchrist*
Brian R. Gilchrist, FL Bar #774065
bgilchrist@allendyer.com